IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERMITAGE INSURANCE COMPANY | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| | § § | |
| DIAMAX INDUSTRIES, INC., | § § | |
| Defendant | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Hermitage Insurance Company files this Complaint seeking declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202 against Defendant Diamax Industries, Inc. This Complaint is for the purpose of determining a question of actual controversy between the parties regarding coverage under two inland marine insurance policies, as more fully set out below.

### I.

### JURISDICTION AND VENUE

1.    Plaintiff Hermitage Insurance Company ("Hermitage") is a corporation that is incorporated under the laws of the State of New York. Hermitage's principal place of business is in New York.

2.    Defendant Diamax Industries, Inc. ("Diamax") is a corporation that is incorporated under the laws of the State of Georgia. Diamax's principal place of business is in Georgia. Diamax may be served by service on its registered agent, Justin Hong, at 949 West Marietta Street, N.W., Unit X-100, Atlanta, GA 30318, or wherever he may be located.

3.      Hermitage and Diamax are citizens of different states, and the matter in controversy in this case exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has jurisdiction by virtue of 28 U.S.C. § 1332.

4.      This Court is a proper venue for this action under 28 U.S.C. § 1391(b)(1) because this case arises out of an underlying lawsuit against Diamax in Harris County, Texas in which Diamax has filed an appearance.   Because it is subject to personal jurisdiction in Texas and this District, Diamax is deemed to be a resident of Texas and this judicial district under 28 U.S.C. §§ 1391(b)(1) and (c)(2).  Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in this judicial district, as the underlying lawsuit in which Diamax seeks a defense and indemnity is currently pending in Harris County, Texas.

## II.

### THE UNDERLYING CLAIM

5.      Claimants Ublester Rodriguez and Marisela Rodriguez ("Claimants") have filed a lawsuit against Diamax, styled "Ublester Rodriguez and Marisela Rodriguez v. Breton USA Customers Service Corp., et al.," MDL Cause No. 2011-55206 in the 333rd District Court of Harris County, Texas (the "Underlying Lawsuit").  A true and correct copy of Plaintiff's Fourth Amended Petition in the Underlying Suit (the "Petition") is attached as Exhibit A, and is fully incorporated by reference herein.

6.      In their Petition, Claimants allege that Claimant Ublester Rodriguez ("Rodriguez") "worked as an industrial polisher, grinder, laminator, fabricator, programmer and machine operator from approximately 2000 to 2011 while employed by Stone Systems of Houston f/k/a Silestone Co." PETITION, p. 5. According to Claimants,

Rodriguez worked with various "grinder, polisher, laminator and fabricator tools and accessories manufactured by Defendants" as a part of his work for Stone Systems. *Id.* While working with these tools and accessories, Rodriguez allegedly "was exposed to silica dust and/or particles." *Id.*

7.      Claimants assert that Rodriguez "contracted complicated silicosis and progressive massive fibrosis" as a result of his alleged exposure to "silica dust and/or particles." *Id.* He was originally diagnosed with silicosis on or about October 13, 2010, and Claimants state that he "suffers from Class IV impairment" that "will increase with time." *Id.* According to Claimants, Diamax and several other defendants who manufactured the "grinder, polisher, laminator and fabricator tools and accessories" Rodriguez used were negligent and should be strictly liable for alleged defects in their warnings regarding "respiratory hazards" associated with use of their products to cut and grind "silica-containing materials." *Id.,* pp. 6-10. Claimants also make general allegations of malice and conscious indifference against the defendants. *Id.* at 8.

8.      In the Underlying Suit, Claimants seek to recover damages totaling several million dollars against Diamax and the other defendants based upon alleged past and future pain and suffering, past and future mental anguish, past and future medical expenses, past and future physical impairment, permanent partial disability, increased likelihood of developing lung cancer and other lung diseases, loss of earning capacity, past and future lost wages, past and future loss of household services, and past and future loss of consortium. *Id.,* pp. 10-12. They also seek to recover "punitive and exemplary damages of and from Defendants in the sum of $20 million." *Id.,* p. 12.

## III.

### THE INSURANCE POLICY

9.      Hermitage issued Commercial General Liability Policy No. HCP430501 (the "Policy") to Diamax as the named insured with an original policy period of May 11, 2000 to May 11, 2001.  By separate renewal certificates for each year after the original policy period, the policy period was ultimately extended to May 11, 2004.  A true and correct copy of the Policy is attached to this Complaint as Exhibit B, and is fully incorporated by reference herein.  The Policy contains the following liability coverages: (1) Coverage A Bodily Injury and Property Damage Liability; (2) Coverage B Personal and Advertising Injury Liability; and (3) Coverage C Medical Payments.

**A.      Coverage A**

10.      Coverage A in the Policy contains an Insuring Agreement that states, in relevant part, as follows:

> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

11.      According to certain other provisions in paragraph 1 under Coverage A:

>> b.  This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"[and]
>
> (2) The "bodily injury" or "property damage" occurs during the policy period.

12.    Under Section V of the Policy (Definitions). "bodily injury" and "occurrence" are defined as follows:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13.    The Policy contains an endorsement (No. CG 21 49 09 99) entitled "Total Pollution Exclusion Endorsement" (the "Pollution Endorsement") that applies to Coverage A. The Pollution Endorsement states, in pertinent part, as follows:

> This insurance does not apply to:
>
> **f.    Pollution**
>
> > (1)    Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

14.    As defined in the Policy, the term "pollutants" refers to "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Policy, Section V (Definitions), Definition 15.

15.    Coverage A of the Policy also contains the following exclusion:

> This insurance does not apply to:

### a.       Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended
from the standpoint of the insured. This exclusion does not
apply to "bodily injury" resulting from the use of
reasonable force to protect persons or property.

## B.    Coverage B

16.    The insuring agreement in Coverage B of the Policy states that Hermitage

"will pay those sums that the insured becomes legally obligated to pay because of

'personal and advertising injury' to which this insurance applies." Hermitage has the

right and duty to defend Diamax in any suit seeking these damages, but has no duty to

defend Diamax against any suit to which the insurance does not apply.

17.    The term "personal and advertising injury" is defined in the Policy as follows:

"Personal and advertising injury" means injury, including
consequential "bodily injury," arising out of one or more of
the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or
invasion of the right of private occupancy of a room,
dwelling or premises that a person occupies, committed by
or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material
that slanders or libels a person or organization or
disparages a person's or organization's goods, products or
services;

e. Oral or written publication, in any manner, of material
that violates a person's right of privacy;

f. The use of another's advertising idea in your
"advertisement," or

g. Infringing upon another's copyright, trade dress or

slogan in your "advertisement."

## C.     Coverage C

18.     The Insuring Agreement in Coverage C of the Policy states that Hermitage "will pay medical expenses . . . for 'bodily injury' caused by an accident: (1) [o]n premises you own or rent: (2) [o]n ways next to premises you own or rent: or (3) [b]ecause of your operations[.]"   Coverage C also contains an exclusion "for 'bodily injury' . . . [e]xcluded under Coverage A."   Policy. Section I. Coverage C Medical Payments. Exclusion g.

## D.     Voluntary Payments

19.     With respect to any claims to be asserted under the Policy. Section IV of Policy Form CG 00 01 provides that. in the event of an occurrence. offense. claim or suit. "[n]o insured will. except at the insured's own cost. voluntarily make a payment. assume any obligation. or incur any expense. other than for first aid. without our consent" (the "Voluntary Payment Prohibition").

## IV.

### BASES FOR DECLARATION OF NO COVERAGE

20.     In the Underlying Suit. Claimants allege that their damages and losses occurred as a result of Rodriguez's alleged inhalation of silica dust.   Because silica dust is a pollutant under the Policy. Diamax's claim for Coverage under Coverage A of the Policy is excluded under the Pollution Endorsement.

21.     The claims against Diamax in the Underlying Suit do not fall within the definition of "personal and advertising injury" contained in the Policy.   Therefore. there is no coverage for those claims under Coverage B of the Policy.

22.     The claims against Diamax in the Underlying Suit do not arise out of an accident that occurred on or adjacent to premises owned or rented by Diamax, or because of Diamax's operations.   As a consequence, those claims fall outside the coverage provided in Coverage C of the Policy.

23.     The claims against Diamax in the Underlying Suit are excluded under Coverage A of the Policy because of the Pollution Endorsement.  As a consequence, they are also excluded under the exclusion in Coverage C for all claims that are excluded under Coverage A.

24.     The claim for exemplary damages against Diamax in the Underlying Suit is not covered under the Policy  because of the requirement such damages fail to satisfy the "occurrence" requirement set forth in the Policy.

25.     The claim for exemplary damages against Diamax in the Underlying Suit is not covered under the Policy because of the exclusion for expected or intended injury in the Policy.

26.     Any provision in the Policy that would provide indemnity for any award of exemplary damages against Diamax in connection with the Underlying Suit is unenforceable based upon public policy considerations.

27.     In the Underlying Suit, Claimants allege that their injuries and damages resulted from silica dust exposure over a period of approximately eleven years.  Because the Policy was in effect over a period of only four years, any alleged exposure occurring outside the policy period is not covered under the Policy.

28.     Claimants joined Diamax as a defendant in the Underlying Suit in October, 2012.  Prior to making its coverage claim, Diamax retained counsel for the

Underlying Suit and incurred attorneys' fees and other expenses associated with its own defense without notifying Hermitage or obtaining Hermitage's approval. Under the Voluntary Payment Prohibition, Hermitage is not required to indemnify Diamax for any of these payments voluntarily made prior to Diamax's coverage claim.

29.     After Diamax made its coverage claim, Hermitage investigated the claim and forwarded a reservation of rights letter to Diamax dated January 18, 2013 disclaiming coverage but agreeing to provide a defense to Diamax under a reservation of rights. A true and correct copy of the reservation of rights letter is attached to this Complaint as Exhibit C, and is fully incorporated by reference herein.

30.     On March 29, 2013, Hermitage forwarded a supplemental reservation of rights letter to Diamax providing additional grounds supporting Hermitage's disclaimer of coverage and again confirming Hermitage's agreement to provide a defense to Diamax under a reservation of rights. A true and correct copy of this supplemental reservation of rights letter is attached to this Complaint as Exhibit D, and is fully incorporated by reference herein.

31.     Hermitage is presently providing a defense to Diamax in the Underlying Suit pursuant to a reservation of its rights and defenses as set forth in the reservation of rights letters attached to this Complaint as Exhibits C and D.

## V.

### DECLARATORY RELIEF IS APPROPRIATE

32.     For the reasons stated above, there is an actual controversy between Hermitage and Diamax within the jurisdiction of this court and involving the rights and

liabilities under a contract of liability insurance, which controversy may be determined by a judgment of this court, without other suits.

## VI.

## PRAYER

Based on the foregoing considerations, Plaintiff Hermitage Insurance Company respectfully prays that:

1.      This Court determine and adjudicate the right and liabilities of the parties with respect to the Policy.

2.      This Court find and declare that Hermitage is under no duty or obligation to appear and defend the Underlying Suit on behalf of Diamax, or to indemnify Diamax against any sums for which it may be held liable in the Underlying Suit, or to pay any claims of any kind to Diamax as a result of the claims that are the subject of the Underlying Suit.

3.      Hermitage be awarded all of its costs of suit in this action.

4.      Hermitage be awarded any other and further relief of any nature to which it may be justly entitled.

Respectfully submitted.


By: _____

**David M. Macdonald, Attorney-in-Charge**
State Bar No. 12755300
Southern District No. 22762
DMacdonald@MacdonaldDevin.com
**Steven R. Baggett**
State Bar No. 01510680
Southern District No. 578076
SBaggett@MacdonaldDevin.com
**Macdonald Devin, P.C.**
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2130
214.744.3300 Telephone
214.747.0942 Facsimile

**ATTORNEYS FOR PLAINTIFF HERMITAGE INSURANCE COMPANY**